UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  9/13/2018___

------------------------------------------------------- X
                                                        :
JESSICA WEYANT,                                         :
                              Plaintiff,                :
                                                        :        17 Civ. 8230 (LGS)
              -against-                                 :
                                                        :        **OPINION AND ORDER**
THE PHIA GROUP LLP, *et al.*,                           :
                              Defendants.  :
                                                        :
------------------------------------------------------- X

LORNA G. SCHOFIELD, District Judge:

        Plaintiff Jessica Weyant brings this putative class action against Defendants Phia Group,

LLC ("Phia") and INDECS Corporation ("INDECS") (collectively, "Defendants"), on behalf of

herself and those similarly situated, alleging violations of New York General Obligations Law

("GOL") § 5-335, the terms of a health benefits plan, the duty of good faith and fair dealing,

New York General Business Law ("GBL") § 349 and conversion.  Defendants move to dismiss

the Amended Complaint (the "Complaint") in its entirety under Federal Rule of Civil Procedure

12(b)(6).  Plaintiff cross-moves for partial summary judgment on her claims alleging violations

of GOL § 5-335 and the terms of a health benefits plan (Counts I, II and III).  Defendants'

motion to dismiss is granted in part and denied in part, and partially converted into a motion for

summary judgment and granted.  Plaintiff's motion for partial summary judgment is denied as

moot.[1]

_____

[1] In connection with Plaintiff's motion for partial summary judgment, Plaintiff moved to strike
portions of declarations submitted by Defendants.  Because the challenged submissions were not
considered, the motion to strike is denied as moot.

## I.    BACKGROUND

The facts below are undisputed and taken from the Complaint and the parties' submissions on these motions.

During the relevant period, Plaintiff was a participant in the Orange-Ulster School Districts Health Plan (the "Plan").  Defendant INDECS is the claims administrator for the Plan, and is "required to process claims strictly in accordance with the Plan Administrator's Instructions."  Defendant Phia is the authorized agent of INDECS.

In 2012, Plaintiff was involved in a motor vehicle accident (the "Accident") in Maryland. Plaintiff received benefits under the Plan for injuries she sustained in the Accident.

Plaintiff commenced an action for personal injuries in Maryland stemming from the Accident.  The parties to the Maryland action settled, and Plaintiff received a settlement payment.  Defendants INDECS and Phia asserted a lien on Plaintiff's settlement, seeking reimbursement for benefits Plaintiff had received under the Plan as a result of the Accident. Plaintiff paid Phia $16,057.19 from her settlement.

Plaintiff asserts on various theories that the Plan was not entitled to obtain reimbursement from her settlement.  However, Plaintiff has not sued the Plan or the municipality that issued it, but instead has sued only the claims administrator for the Plan and its agent.

## II.   LEGAL STANDARDS

### A.    Motion to Dismiss

On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party, *Montero v. City of Yonkers, New York*, 890 F.3d 386, 391 (2d Cir. 2018), but gives "no effect to legal conclusions couched as factual allegations," *Stadnick v. Vivint Solar, Inc.*, 861 F.3d 31, 35 (2d Cir. 2017).  To withstand

a motion to dismiss, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In deciding a Rule 12(b)(6) motion, the court is limited to reviewing the relevant pleading and any documents attached to that pleading or incorporated in it by reference. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

### B. Converting a Motion to Dismiss to Summary Judgment

Where a motion to dismiss presents matters outside of the pleadings, the court may consider them but only by converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56. Fed. R. Civ. P. 12(d). To do so, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id.*; *see Parada v. Banco Indus. De Venezuela, C.A.*, 753 F.3d 62, 67–68 (2d Cir. 2014) (affirming a district court's conversion of a motion to dismiss into a motion for summary judgment where the opposing party was given sufficient notice and an opportunity to respond). Formal notice is not required ordinarily "where a party should reasonably have recognized the possibility" of such conversion. *Galiotti v. Green*, 475 F. App'x. 403, 404 (2d Cir. 2012) (summary order) (internal quotation marks omitted) (quoting *Hernandez v. Coffey*, 582 F.3d 303, 307 (2d Cir. 2009); *accord Ramirez v. SupportBuddy Inc.*, No. 17 Civ. 5781, 2018 WL 2089362, at *3 (S.D.N.Y. May 4, 2018).

Defendants' motion to dismiss claims for violating the terms of the Plan is converted to a motion for summary judgment. As Plaintiff herself is moving for summary judgment on the same issue, she had a reasonable opportunity to present all material pertinent to the issue of

Defendants' alleged violation of the terms of the Plan, and she should have reasonably recognized the possibility of the Court converting Defendants' motion to dismiss on the same issue into a motion for summary judgment. *See, e.g.*, *Neeseman v. Mt. Sinai W.*, No. 17 Civ. 1766, 2018 WL 626358, at *5 (S.D.N.Y. Jan. 30, 2018) (converting a motion to dismiss into a motion for summary judgment where the party submitted evidence outside of the pleadings in response to the motion to dismiss); *NYC C.L.A.S.H., Inc. v. City of New York*, 315 F. Supp. 2d 461, 471 (S.D.N.Y. 2004) (converting defendants' motion to dismiss into a motion for summary judgment "particularly in view of [plaintiff's] own cross-motion for summary judgment").

### C.     Motion for Summary Judgment

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is a genuine dispute as to a material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transportation Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 154 (2d Cir. 2017) (citations omitted). When the movant has properly supported its motion with evidentiary materials, the opposing party may only establish a genuine issue of fact by "citing to particular parts of materials in the record."

Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Rodriguez v. City of New York*, 291 F. Supp. 3d 396, 408 (S.D.N.Y. 2018).

## III.   DISCUSSION

### A.   The Complaint Fails to Plead a Violation of GOL § 5-335 (Counts I and III)

Defendants move to dismiss, and Plaintiff cross-moves for summary judgment on, Plaintiff's claim that Defendants violated GOL § 5-335 by asserting a right to, and receiving, reimbursement from Plaintiff out of her personal injury settlement for benefits Plaintiff previously received under the Plan. Defendants' motion is granted, and the GOL § 5-335 claim (Count III) is dismissed as well as the request for declaratory judgment on the same ground (Count I).

#### 1.   Under New York Choice of Law Principles, New York Law Applies

The parties dispute whether New York or Maryland law applies to Defendants' ability to seek reimbursement for Plan benefits Plaintiff received as a result of the Accident. Defendants contend that Maryland law should apply, while Plaintiff counters that New York law should govern. For the following reasons, New York law applies to this action.

Sounding in diversity, the choice of law rules of New York, the forum state, apply to this action. *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 132 (2d Cir. 2018) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941)). There is no applicable choice of law agreement that, under New York choice of law principles, would bind the parties. *See id.* With respect to GOL § 5-335, even if the Plan contained a choice of law provision, "[GOL § 5-335 is a] legal rule of proof [that] applies irrespective of any language that may

appear in the parties' contract or benefit plan and around which the parties cannot contract." *Arnone v. Aetna Life Ins. Co.*, 860 F.3d 97, 109 (2d Cir. 2017).

In the absence of an applicable choice of law clause, New York choice of law requires a two-step inquiry to determine whether New York or Maryland law applies. The first step is to determine whether the laws of the two jurisdictions conflict. *Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y.*, 822 F.3d 620, 641 (2d Cir. 2016) (citing *In re Allstate Ins. Co. (Stolarz)*, 613 N.E.2d 936, 937 (N.Y. 1993)). If the laws of New York and Maryland are in conflict, the second step in a contract case is to apply the "center of gravity" test to determine which jurisdiction's law applies. *Id.* (citing *In re Liquidation of Midland Ins. Co.*, 947 N.E.2d 1174, 1179 (N.Y. 2011)).

The "center of gravity" theory confers "the place having the most interest in the problem paramount control over the legal issues arising out of a particular factual context, thus allowing the forum to apply the policy of the jurisdiction most intimately concerned with the outcome of the particular litigation." *Id.* at 642 (citing *In re Liquidation of Midland*, 16 N.Y.3d at 544). "Under this approach, courts may consider a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *AEI Life*, 892 F.3d at 135. Paramount of these factors are "[t[he place of contracting and place of performance." *Id.* Although "[t]he grouping of contacts inquiry is the 'primary analytical tool' to be used in resolving conflict of law issues relating to contracts, . . . when 'the policies underlying conflicting laws in a contract dispute are readily identifiable and reflect strong governmental interests', those governmental interests may be considered." *Eagle Ins. Co. v. Singletary*, 717 N.Y.S.2d 351, 353 (2d Dep't 2000) (quoting *In re Allstate*, 81 N.Y.2d at 226).

First, New York and Maryland law conflict.  New York statutorily bars insurers from asserting a right to reimbursement against an insured who settles a personal injury claim.  N.Y. Gen. Oblig. Law § 5-335.  Maryland does not.[2]

Second, New York contacts outweigh those of Maryland in this case.  Plaintiff is domiciled in New York; the Plan is subject to New York Insurance Law; the Plan is governed by a Board of Directors comprised of the Superintendents of the participating school districts, all of which are in New York; and the Executive Director and Plan Administrator works in New York. Further, the parties do not dispute that New York law governs the interpretation of the Plan. Although the Accident occurred in Maryland and Plaintiff brought a personal injury suit in Maryland, these connections to Maryland pale in comparison to the New York contacts.

Additionally, New York's interests outweigh that of Maryland.  New York passed GOL § 5-335 to

> ensure that insurers will not be able to claim or access any monies paid in
> settlement of a tort claim whether by way of a lien, a reimbursement claim,
> subrogation, or otherwise so that the burden of payment for health care services
> . . . for the victims of torts will be borne by the insurer and not any party to a
> settlement of such a victim's tort claim.

N.Y. Bill Jacket, 2013 A.B. 7828-A, Ch. 516.  New York's interest in passing GOL § 5-335 is directly implicated in this case.  New York has an interest in seeing that healthcare costs of a New York tort victim are paid by her New York health benefits plan, and not by the settlement proceeds she received from a presumed tortfeasor.  In contrast, Defendants have not articulated a strong Maryland interest in this case.  As New York has more contacts with, and a superior interest in, this litigation, New York law applies.

---

[2] The parties have not raised any particular Maryland statute that bars an insurer from seeking reimbursement on the settlement of a personal injury claim, and the Court has not independently found one.

Defendants assert that applying GOL § 5-335 to this case would cause New York law to reach impermissibly outside state lines. This argument is rejected. Although "New York cannot by its statutes control or impair transactions which are extraterritorial," *Palmetto Fire Ins. Co. v. Beha*, 13 F.2d 500, 508 (S.D.N.Y. 1925), the underlying transaction and relationship in this case are centered in New York -- between Defendants, who are agents of a New York health benefit plan, and a New York beneficiary of the plan. Even though Plaintiff's Accident and tort settlement may have originated in Maryland, they are not the subject of this action. Thus, applying New York law to the dispute between Plaintiff and Defendants is not extraterritorial.

Defendants argue that applying New York law would thwart the purpose of the collateral source and subrogation rules of Maryland and New York, which Defendants assert is preventing double recovery. This argument is unpersuasive because it depends on Defendants' rewriting of GOL § 5-335 to say that an insured *cannot* seek damages for reimbursed healthcare expenses -- i.e., that it bars a plaintiff from recouping in a lawsuit what it has already received from an insurer.[3] Quite the opposite, GOL § 5-335 provides, "[I]t shall be conclusively *presumed* that the settlement does not include any compensation for the cost of health care services" that "have been or are obligated to be paid or reimbursed by an insurer." N.Y. Gen. Oblig. Law § 5-335(a) (emphasis added). To enforce this presumption, GOL § 5-335 divests an insurer of any "right of subrogation or reimbursement against any" party to a personal injury settlement "with respect to those losses or expenses that have been or are obligated to be paid or reimbursed by said insurer." *Id.* Thus, by its plain terms, even if a settlement includes compensation for healthcare expenses paid by an insurer, an insurer may not assert a right of subrogation or reimbursement.

---

[3] Defendants' election of remedies argument similarly fails because it depends on the same misreading of GOL § 5-335.

*See Arnone*, 860 F.3d at 105–06 (preventing an insurer from offsetting disability benefits by the amount of a personal injury settlement because GOL § 5-335 expressly bars insurers from treating settlements as "compensation for the cost of health care services, loss of earnings or other economic loss to the extent those losses or expenses have been or are obligated to be paid or reimbursed by an insurer") (quoting § 5-335); *Ferlazzo v. 18th Ave. Hardware, Inc.*, 929 N.Y.S.2d 690, 694 (Sup. Ct. 2011) (holding that an insurer "subject to the provisions of GOL § 5-335 . . . is not entitled to recoup any part of plaintiff's settlement proceeds as compensation for the cost of health care services").

For these reasons, New York law -- including GOL § 5-335 -- applies to this dispute.

### 2. GOL § 5-335 Does Not Apply to Defendants

The Complaint fails to allege that Defendants violated GOL § 5-335 because Defendants are not "insurers" under the plain language of the statute. GOL § 5-335 provides that when a personal injury claim is settled, "[n]o person entering into such a settlement shall be subject to a . . . claim for reimbursement by an insurer . . . ." N.Y. Gen. Oblig. Law § 5-335(a). GOL § 5-101 defines "insurer" as "any insurance company or other entity which provides for payment or reimbursement of health care expenses . . . or any other benefits under a policy of insurance or an insurance contract . . . ." *Id.* § 5-101. "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning." *Anonymous v. Molik*, No. 77, 2018 WL 3147607, at *4 (N.Y. June 28, 2018) (internal quotation marks omitted).

The Complaint fails to allege a claim under GOL § 5-335 because Defendants are not "insurers" within the meaning of the statute. The Complaint alleges, and the Plan confirms, that INDECS is the claims administrator of the Plan. The Complaint further alleges that Phia is the authorized agent of INDECS, and is "an experienced provider of health care cost containment

techniques offering comprehensive consulting services, legal expertise, plan document drafting, subrogation and overpayment recovery, claim negotiation, and plan defense designed to control costs and protect plan assets." Defendants are thus the Plan's claims administrator and the claims administrator's agent.

As the claims administrator and its agent, neither Defendant "provides for payment or reimbursement of health care expenses." N.Y. Gen. Oblig. Law § 5-101. Rather, the Plan does. *See* Complaint, Dkt. No. 12 at ¶ 4 ("[Plaintiff] received medical benefits through her health benefits coverage sponsored by the member School Districts."). INDECS (and thus Phia) was tasked with administering claims in accordance with the terms of Plan. Neither Defendant possessed a direct financial stake in the health benefit reimbursement they sought on behalf of the Plan. Unlike this case, other cases proceeding under GOL § 5-335 have included an "insurer" as defined in the statute. *See e.g.*, *Wurtz v. Rawlings Co.*, 761 F.3d 232, 237 (2d Cir. 2014) (suing the insurer and the company that collects subrogation claims on behalf of the insurer); *Calingo v. Meridian Res. Co.*, No. 11 Civ. 628, 2013 WL 1250448, at *1 (S.D.N.Y. Feb. 20, 2013) (suing the insurance company and the company that assisted in reimbursement efforts); *Iron Workers Locals 40, 361 & 417 Health Fund v. Dinnigan*, 911 F. Supp. 2d 243, 245 (S.D.N.Y. 2012) (raising GOL § 5-335 as a defense to a suit brought by an employee health and welfare benefits plan). Plaintiff does not cite -- nor did the Court independently find -- any case in which a claims administrator was sued for violation of GOL § 5-335, except where the claims administrator was also the insurer. *See, e.g.*, *Arnone*, 860 F.3d at 100 ("Aetna . . . is both the Plan's insurer and its claims administrator.").

Because Defendants are not "insurers" under GOL § 5-335, the Complaint's claims based on GOL § 5-335 -- Counts I (as to violations of GOL § 5-335) and II -- are dismissed.

**B.     Defendants are Granted Summary Judgment on the Claim that They Violated the Terms of the Plan (Counts I and III)**

The Complaint asserts that Defendants violated the Plan's provision that "the Plaintiff and other members of the Plan are 'not personally [] responsible to repay the Plan for the benefits' the Plan pays as a result of injuries caused by other parties." Summary judgment is granted in favor of Defendants because they did not have a contractual relationship with Plaintiff under the Plan, but rather were acting as agents of the Plan and disclosed their agency relationship to Plaintiff.

This claim is construed as a contract claim because Plaintiff articulates no other theory on which she could assert a violation of the Plan's terms. A fundamental element of a breach of contract claim is a contract between the parties. *Nick's Garage*, 875 F.3d at 114 (applying New York law). The Plan is not a contract between Plaintiff and Defendants as neither Defendant is a party to the Plan. The Complaint alleges that INDECS is a third party to the Plan, and that Phia is INDECS's authorized agent.

An agent who acts on behalf of a disclosed principal is not liable for a breach of contract between the plaintiff and the principal "unless there is clear and explicit evidence of the agent's intention to substitute or superadd his personal liability for, or to, that of his principal." *Savoy Record Co. v. Cardinal Exp. Corp.*, 15 N.Y.2d 1, 4 (2d Dep't 1964) (internal quotation marks omitted); *accord Jonas v. Nat'l Life Ins. Co.*, 48 N.Y.S.3d 77, 80 (1st Dep't 2017) (affirming dismissal of breach of contract claim against an insurance company's agent, where defendant did not issue the policy and there was no allegation that defendant intended to substitute its liability for, or add its liability to, that of the insurance company). "The defense of agency in avoidance of contractual liability is an affirmative defense and the burden of establishing the disclosure of the agency relationship and the corporate existence and identity of the principal is upon he [or

she] who asserts an agency relationship." *Stonhard v. Blue Ridge Farms, LLC*, 980 N.Y.S.2d 507, 509 (2d Dep't 2014) (alteration in original) (internal quotation marks omitted). "A principal is considered to be 'disclosed' if, at the time of a transaction conducted by an agent, the other party to the contract had notice that the agent was acting for the principal and of the principal's identity." *Id.* (internal quotation marks omitted).

Summary judgment is granted in favor of Defendants because the record conclusively shows that Defendants disclosed their agency relationship, and there is no evidence that they intended to be personally bound. Both Phia and INDECS disclosed their respective principals when contacting Plaintiff. Phia wrote in its April 12, 2012, letter to Plaintiff, "This office represents the Orange-Ulster School Districts Employee Benefit Plan ('the Plan') and its plan administrator, INDECS Corporation . . . ." In INDECS' July 31, 2013, letter to Plaintiff, INDECS introduced itself as, "INDECS Corporation, the health claims administrator for the employee benefit plan Orange-Ulster School Districts Health Plan . . . ." Plaintiff does not point to any evidence, let alone clear and explicit evidence, of Defendants' intent to be personally bound. Consequently, Defendants are not liable for breaching the terms of the Plan. *See e.g.*, *Envtl. Appraisers & Builders, LLC v. Imhof*, 40 N.Y.S.3d 132, 135 (2d Dep't 2016) ("[P]laintiffs failed to state a cause of action alleging breach of contract against [the agent], since [the agent] was not a party to the contracts . . . , and the plaintiffs effectively alleged that [the agent] acted as an agent on behalf of a disclosed principal, without alleging that she intended to be personally bound.") (internal citations omitted); *Lido Beach Towers v. Denis A. Miller Ins. Agency*, 11 N.Y.S.3d 192, 194 (2d Dep't 2015) (holding that an agent was not liable for breach of contract where "there was no evidence of [the agent's] intent to be personally bound"). Defendants' motion for summary judgment on Counts I (as to violations of the Plan) and III is granted.

## C. The Complaint Fails to Plead a Violation of the Duty of Good Faith and Fair Dealing (Count VI)

Under New York law, the duty of good faith and fair dealing "only arises . . . when the *parties in question* entered the contract from which the duty is said to arise." *Herman v. Green*, 234 F.3d 1262, 2000 WL 1591272, *2 (2d Cir. 2000) (summary order) (emphasis added) (applying New York law). As discussed above, the Complaint does not allege, nor does it appear, that either Defendant was a party to the Plan. *See, e.g.*, *Randall's Island Aquatic Leisure, LLC v. City of New York*, 938 N.Y.S.2d 62, 63 (1st Dep't 2012) ("There can be no claim of breach of the implied covenant of good faith and fair dealing without a contract."). Count VI is dismissed.

## D. The Complaint Fails to Plead a Violation of GBL § 349 (Count IV)

Defendants' motion to dismiss the GBL § 349 claim is granted as the Complaint fails to plead a sufficient claim. GBL § 349(a) prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." N.Y. Gen Bus. Law § 349(a). To state a claim for violating GBL § 349, the Complaint "must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading[4] and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Nick's Garage*, 875 F.3d at 124 (internal quotation marks omitted) (quoting *City of New York v.*

---

[4] The sufficiency of pleading a GBL § 349 claim is governed only by the general pleading standard in Rule 8(a) and not the heightened pleading standard in Rule 9(b). *Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005). "That said, the 'bare-bones notice-pleading requirements' for GBL § 349 claims described in *Pelman* have been superseded by the more rigorous plausibility standards set forth in [*Iqbal* and *Twombly*]." *Precision Imaging of New York, P.C. v. Allstate Ins. Co.*, 263 F. Supp. 3d 471, 476 n.4 (S.D.N.Y. 2017); *accord RCA Trademark Mgt. S.A.S. v. VOXX Intern. Corp.*, No. 14 Civ. 6294, 2015 WL 5008762, at *4 (S.D.N.Y. Aug. 24, 2015) (analyzing, among other things, GBL § 349 claims under *Twombly*).

*Smokes-Spirits.com, Inc.*, 911 N.E.2d 834, 838 (N.Y. 2009)); *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012).

GBL § 349 is a consumer fraud statute "directed at wrongs against the consuming public." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 744 (N.Y. 1995). Its purpose is to ensure "an honest market place where trust prevails between buyer and seller." *Id.* (internal quotation marks omitted). A plaintiff need not plead "repetition or pattern of deceptive conduct," but a plaintiff must show "that the acts or practices have a broader impact on consumers at large." *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 64 (2d Cir. 2010) (quoting *Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 744). Conclusory allegations regarding consumer impact are insufficient. *See Scarola v. Verizon Commc'ns, Inc.*, 45 N.Y.S.3d 464, 465 (1st Dep't 2017).

Plaintiff's conclusory allegations regarding consumer-oriented conduct fail to meet the standards of *Iqbal* and *Twombly*. The Complaint alleges that "Defendants made repeated and pervasive representations to Plaintiffs . . . that[] Defendants were legally entitled to liens and repayment as from Plaintiff's personal injury recoveries . . . " and that "Defendants, through their conduct, actively, affirmatively and systematically misinformed the insureds that Defendants were entitled to liens and repayment." These conclusory allegations of speculative interactions with other class members fall short of plausibly alleging consumer impact. *See, e.g.*, *Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 112 F. Supp. 3d 160, 167 (S.D.N.Y. 2015) (applying New York law) (finding the consumer-oriented conduct prong was not met where the conduct at issue was filing lawsuits, and the complaint conclusorily alleged that the defendants had filed lawsuits against other consumers); *Scarola*, 45 N.Y.S.3d at 465 ("Plaintiff's conclusory allegations as to the effect of the conduct on other consumers are

insufficient to transform a private dispute into conduct with further-reaching impact."); *Golub v. Tanenbaum-Harber Co.*, 931 N.Y.S.2d 308, 310 (1st Dep't 2011) ("[C]onclusory allegations about defendant's practices with other clients are insufficient . . . ."). Consequently, the Complaint does not state a claim under GBL § 349, and Count IV is dismissed.

### E. The Complaint Pleads a Claim for Conversion (Count VII)

For the following reasons, the Complaint sufficiently alleges a conversion claim.

"A conversion takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession." *Colavito v. N.Y. Organ Donor Network, Inc.*, 860 N.E.2d 713, 717 (N.Y. 2006). For a conversion to occur, "[t]he plaintiff must have a superior right of possession to the funds." *Lucker v. Bayside Cemetery*, 979 N.Y.S.2d 8, 17 (1st Dep't 2013). An agent is liable for conversion, even if committed for the benefit of the principal or without intent. 2A Tracy Bateman et al., *New York Jurisprudence* § 350 (2d ed. 2018); *see R. L. Rothstein Corp. v. Kerr S.S. Co.*, 251 N.Y.S.2d 81, 86 (1st Dep't 1964), *aff'd,* 206 N.E.2d 360 (N.Y. 1965) ("[A]n agent of a disclosed principal[] is liable."); *see also In re MF Glob. Holdings Ltd. Inv. Litig.*, 998 F. Supp. 2d 157, 184 (S.D.N.Y. 2014), *aff'd*, 611 F. App'x 34 (2d Cir. 2015) (summary order) ("A corporate officer can be liable for conversion even when acting on behalf of his or her employer."). "However, if a principal would not become liable for conversion . . . the agent . . . would not become personally liable in the place of the principal." Bateman et al., *supra* § 350 (citing *Sagone v. Mackey*, 122 N.E. 621, 622 (N.Y. 1919)).

Here, the inquiry is whether Plaintiff or the Plan -- as Defendants' principal -- had a superior right to the funds at issue. If Plaintiff had the superior right, then Defendants -- acting as the Plan's agents -- are liable for conversion. Because GOL § 5-335 applies to the Plan and

Plaintiff offers a reasonable interpretation of the Plan, Plaintiff pleads a superior right to the money in question and a claim for conversion against Defendants. Defendants' motion to dismiss Count Seven is denied.[5]

### 1. GOL § 5-335 Applies to the Plan

The Complaint alleges a sufficient claim that the Plan, and thus Defendants as the Plan's agents, violated GOL § 5-335 because the Plan is an "insurer" as defined in the statute.

"It is fundamental that a court, in interpreting a statute, should attempt to effectuate the intent of the Legislature." *Molik*, 2018 WL 3147607, at *4 (internal quotation marks omitted). "[W]here the language of a statute is clear and unambiguous, courts must give effect to its plain meaning." *Id.* (internal quotation marks omitted). "Where the language is ambiguous or where literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the [statute's] enactment, courts may [r]esort to legislative history." *Id.* (internal quotation marks omitted) (alteration in original).

As stated above, GOL § 5-101 defines "insurer" as "any insurance company or other entity which provides for payment or reimbursement of health care expenses . . . or any other benefits under a policy of insurance or an insurance contract . . . ." §5-101.

The plain language of GOL § 5-101 encompasses a self-funded health benefits plan. First, the Plan is an entity that provides for payment or reimbursement of health care expenses. Defendants argue that "insurer" means only an "insurance company." This is incorrect. The statute defines "insurer" as an "insurance company *or other entity*." *Id.* (emphasis added). To

---

[5] Plaintiff's argument that Defendants are liable under a concerted action theory is not considered because Plaintiff raised this argument for the first time in its reply brief. *See Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Cruz v. Zucker*, 116 F. Supp. 3d 334, 349 n.10 (S.D.N.Y. 2015) (declining to address arguments raised for the first time in reply brief).

limit a reading of "insurance company *or other entity*" to "insurance company" would alter the statute. *See* N.Y. Stat. Law § 98 ("All parts of a statute must be harmonized with each other as well as with the general intent of the whole statute, and effect and meaning must, if possible, be given to the entire statute and every part and word thereof."); *Wright v. Sokoloff*, 973 N.Y.S.2d 743, 745 (2d Dep't 2013) (alteration in original) (internal quotation marks omitted) (quoting *Cahen v. Boyland*, 132 N.E.2d 890, 892 (N.Y. 1956)) ("It is a cardinal principle to be observed in construing legislation that . . . whenever practicable, effect must be given to all the language employed."). Second, the Plan is a "policy of insurance or insurance contract," N.Y. Gen. Oblig. Law § 5-335, because it promises to pay for health benefits rendered to a Plan participant when conditions are met. Defendants do not dispute this point.

The legislative history also supports the conclusion that the Plan, a self-funded municipal health benefits plan, is an insurer under GOL § 5-101. "When section 5-335 was enacted in 2009, it eliminated an asymmetry between jury verdicts and settlements that tended to discourage the settlement of personal injury lawsuits." *Wurtz*, 761 F.3d at 236. In particular, jury awards could not include medical expenses even though insurers could seek a refund of medical expenses included in a settlement. *Id.* at n.3. "Thus, tortfeasors would be unlikely to include medical expenses in settlement offers (as these would not be included in awards at trial), and yet insurers could use subrogation to extract from tort settlements medical expenses that they had covered." *Id.* GOL § 5-335 fixed this issue by providing that "a personal injury settlement presumptively 'does not include any compensation for the cost of health care services' or other losses that 'are obligated to be paid or reimbursed by a benefit provider' . . . and that benefit providers have no 'right of subrogation or reimbursement against any such settling party.'" *Id.* at 236.

After a district court held that GOL § 5-335 was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), *Wurtz v. Rawlings Co., LLC*, 933 F. Supp. 2d 480, 507 (E.D.N.Y. 2013), the legislature enacted the November 2013 Amendments to place the statute squarely within the ERISA savings clause, "which allows States to regulate an insurers subrogation rights." N.Y. Bill Jacket, 2013 A.B. 7828-A, Ch. 516. The bill jacket states: "The purpose of this bill is to correct any misunderstanding as to the applicability and scope of [GOL § 5-335]." *Id.* It goes on to say, "[t]his bill is a corrective measure that will bring the General Obligation Law clearly under ERISA's savings clause" and that "this was the legislature['s] original intent." *Id.* This history shows that the November 2013 Amendments were technical, not substantive, in nature. Also, the legislature retroactively applied the November 2013 Amendments to November 12, 2009 -- the date GOL § 5-335 was first enacted. *See Arnone*, 860 F.3d at 105 n.6 ("As we noted in *Wurtz*, the amendment applies retroactively to the period between November 12, 2009, and November 13, 2013 (the date of the amendment's enactment)."). "This will ensure that parties who have entered into settlements in the expectation that New York law apply, will not now be harmed by the federal court's ruling." N.Y. Bill Jacket, 2013 A.B. 7828-A, Ch. 516. Retroactively applying the November 2013 Amendments signals that the edits did not substantively change the original language.

A self-funded municipal health benefits plan would have been an insurer under the original statute, *cf. Wurtz*, 761 F.3d at 241 n.6 (noting that "the applicability of [GOL] § 5-335 to self-funded plans would only mean that the law is preempted [by ERISA] as applied to those plans," thus assuming that GOL § 5-335 could apply to self-funded plans), and the legislature did not intend the November 2013 Amendments to substantively alter GOL § 5-101. Thus, the legislative history supports the conclusion that a municipal health benefits plan is an insurer

under GOL § 5-101 even after the November 2013 Amendments.  To hold otherwise would be contrary to the legislative intent.[6]

Although Defendants argue "that when a legislature substantively amends a provision, a significant change in language entails a change in meaning," *see Commonwealth of the Northern Mariana Islands v. Canadian Imperial Bank of Commerce*, 990 N.E.2d 114, 118 (N.Y. 2013) (finding that the legislatures removal of a word "signaled a purposeful legislative modification of the applicable scope of [the] statutes"), here the legislative history reveals an opposite intent to maintain the status quo.

Defendants also assert that Plaintiff failed to exhaust her administrative remedies under the Plan.  The Court need not address this argument at the motion to dismiss stage.  *Paese v. Hartford Life & Acc. Ins. Co.*, 449 F.3d 435, 445–46 (2d Cir. 2006) (holding that failure to exhaust administrative remedies under ERISA is an affirmative defense); *Daly v. New York City*, No. 16 Civ. 6521, 2017 WL 2364360, at *3 (S.D.N.Y. May 30, 2017), *report and recommendation adopted sub nom. Daly v. City of New York*, No. 16 Civ. 6521, 2017 WL 2963502 (S.D.N.Y. July 11, 2017) (stating in the Prison Litigation Reform Act context that "[b]ecause failure to exhaust is an affirmative defense and may be excused, courts in this Circuit have denied motions to dismiss complaints brought on that basis, even where the plaintiff admits to failing to exhaust administrative remedies and does not allege facts explaining the failure"); *S.E.C. v. Bronson*, 14 F. Supp. 3d 402, 407 (S.D.N.Y. 2014) ("A court may dismiss a claim on

---

[6] A recent case from another district court reasoned that because GOL § 5-335 "regulates insurance" for the purposes of ERISA, GOL § 5-335 "applies only to those plans that purchase insurance" and not "self-funded" plans that "[do] not purchase insurance from an insurance company."  *Cognetta v. Bonavita*, No. 17 Civ. 3065, 2018 WL 2744708, at *4 (E.D.N.Y. June 7, 2018).  However, this may run contrary to *Wurtz* in which the Second Circuit stated, "[T]he applicability of N.Y. Gen. Oblig. Law § 5-335 to self-funded plans would only mean that the law is preempted [by ERISA] as applied to those plans . . . ."  761 F.3d at 241 n.6.

the basis of an affirmative defense raised in the motion to dismiss, only if the facts supporting the defense appear on the face of the complaint, and it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.") (internal quotation marks omitted).

Defendants argue that "as agents of the Orange-Ulster School Districts, [Defendants] stand in its shoes and may raise defenses available to . . . the School District when performing administrative services for the Plan." However, all the cases Defendants cite provide an agent with the *immunities* of the principal, not the *defenses* of the principal. *See e.g.*, *Howard v. Finnegans Warehouse Corp.*, 307 N.Y.S.2d 1022, 1023 (3d Dep't 1970) ("[A]n agent who is acting within his authority is entitled to the immunities of the principal."). Because failure to comply with the notice requirements of New York Education Law § 3813(1) or New York General Municipal Law § 50 are not immunities, Defendants cannot assert noncompliance with these statutes as a defense in this suit.

For the foregoing reasons, the Plan is an "insurer" under GOL § 5-101, and thus subject to GOL § 5-335. GOL § 5-335 prohibits insurers, like the Plan, from asserting a claim for reimbursement against an individual who settled a personal injury claim.

Plaintiff asserts an alternative basis for her superior right to the funds -- that the Plan prohibits Defendants, as the Plan's agents, from compelling payment from Plaintiff's Maryland settlement for benefits conferred under the Plan. Plaintiff points to the section called "Other Party Responsibility":

> If you suffer injuries for which another party or payer may be primarily responsible for the loss or payment of the medical expenses, the Plan has an independent right to file a claim or pursue other legal remedies from or against the party that caused the loss, or any entity which may be responsible for payment of the medical expenses, to recoup benefits paid by the Plan that were caused by a third party, or for which payment is potentially the responsibility of

> another party. . . . The Plan will determine whether it will bring an action against the potentially responsible party for payment of medical benefits it has provided for your treatment. **You will not personally be responsible to repay the Plan for these benefits**, but the Plan can file a claim or take action directly against parties which may be potentially responsible for the loss or potentially responsible for payment of the medical expenses.

The Plan, Dkt. No. 26-3 at 53 (emphasis added). Focusing on this language, Plaintiff argues that the Plan "affirmatively states that the Plaintiff is not responsible for repayment." A reasonable jury could agree with this conclusion, and Defendants do not argue this point.

As a result, Plaintiff has sufficiently alleged a plausible superior right to the funds Defendants obtained -- either stemming from GOL § 5-335 or the terms of the Plan. Defendants' motion to dismiss Plaintiff's conversion claim is denied.

### F. Punitive Damages

Defendants also move to dismiss Plaintiff's claim for punitive damages. "Because punitive damages are a form of damages, not an independent cause of action, a motion to dismiss a prayer for relief in the form of punitive damages is procedurally premature." *Hunter v. Palisades Acquistion XVI, LLC*, No. 16 Civ. 8779, 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017) (internal quotation marks omitted). This request is denied without prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss as to Counts I (as to violations of GOL § 5-335), II, IV and VI[7] is GRANTED, and Defendants' motion for summary judgment on Counts I (as to violations of the Plan) and III is GRANTED. Defendants' motion to dismiss the conversion claim in Count VII is DENIED. Plaintiff's motion for summary judgment is DENIED as moot.

---

[7] The Complaint does not contain a Count V.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 25,

26 and 32.

Dated: September 13, 2018
        New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**