USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/26/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                           :

JESSICA WEYANT,                        :

                      Plaintiff,    :

                                        :              17 Civ. 8230 (LGS)

             -against-             :

                                        :         **OPINION AND ORDER**

THE PHIA GROUP LLP, *et al.*,         :

                      Defendants.  :

                                            :

------------------------------------------------------------ X

LORNA G. SCHOFIELD, District Judge:

Plaintiff Jessica Weyant brings this putative class action against Defendants Phia Group, LLC ("Phia") and INDECS Corporation ("INDECS") (collectively, "Defendants"), on behalf of herself and those similarly situated. After Defendants' motion to dismiss and motion for summary judgment, Plaintiff's remaining claim is for conversion. The parties cross-move for summary judgment on the conversion claim, and Defendants put forward a number of affirmative defenses. As Plaintiff failed to exhaust her administrative remedies, Defendants' motion for summary judgment is GRANTED, and Plaintiff's motion for summary judgment is DENIED.

## I.    BACKGROUND

The summary below is taken from the parties' Rule 56.1 statements as well as materials filed in support of the motions. The facts are undisputed unless otherwise stated.

During the relevant period, Plaintiff was a participant in the Orange-Ulster School Districts Health Plan (the "Plan"). Defendant INDECS is the claims administrator for the Plan. Defendant Phia is the authorized agent of INDECS for the purposes of subrogation and reimbursement efforts on behalf of the Plan.

On April 10, 2012, Plaintiff was involved in a motor vehicle accident in Maryland. As a

result of Plaintiff's injuries from the accident, the Plan provided health benefits to Plaintiff.

After Plaintiff settled the underlying personal injury case, Phia, acting on behalf of INDECS,

asserted rights to repayment of benefits paid by the Plan and demanded repayment of $16,057.19

from the settlement.  At the time of Phia's demand for repayment, the claims handlers at Phia

had in their possession a chart, created by in-house lawyers at Phia, containing the anti-

subrogation and anti-reimbursement laws of the states where Phia provides services.  The chart

notes that New York does not permit reimbursement if the plan participant obtains a settlement.

One of the lawyers who prepared the chart testified that he understood that, based on New York

law, the Plan's Other Party Responsibility provision would not authorize a reimbursement claim

by the Plan against Plaintiff's settlement agreement.

On October 4, 2016, Plaintiff's counsel emailed Phia's claims handler stating:

> "As I just mentioned to you over the phone, my client desires to contest the validity of the entire lien.  Because a lien has been asserted, I believe there are two potential options.  The first option is that the amount of the lien could remain in escrow pending the dispute.  The second option, and what I propose, is that my firm mail a check to the Phia Group for the entire amount of the lien . . .  but that the payment will be sent to Phia Group under protest."

On October 11, 2016, the claims handler emailed Plaintiff's counsel, "Can you provide

me with reason patient feels plan not entitled to reimbursement."  Nothing in the record indicates

that Plaintiff's counsel responded to this question beyond the conclusory assertion that the lien as

a whole was invalid.

After more correspondence, on November 22, 2016, Plaintiff's counsel sent Phia a check

for $16,057.19 from the settlement with a letter stating:

> Enclosed please find a check in the amount of $16,057.19, representing the lien for the above employee.  [Plaintiff] has reserved her right to contest the validity of the lien.  You agreed in your November 18, 2016[,] email to me that [Plaintiff] could proceed in this manner.

This check is remitted with the condition that this payment is made under protest, does not waive any dispute or constitute a voluntary payment by [Plaintiff]. If you do not agree to these conditions, then you must immediately return this check and you may not keep, cash or deposit this check.

If you do keep, cash or deposit this check, it constitutes an agreement that this payment is made under protest, does not waive any dispute or constitute voluntary payment by [Plaintiff].

Plaintiff did not file an internal grievance with the Plan disputing the reimbursement claim either before or after delivering her check to Phia.

Plaintiff commenced this action against Phia and INDECS only. She has never sued the Plan on whose behalf Defendants were acting. After a motion to dismiss, the only surviving claim is for conversion. *See Weyant v. Phia Grp. LLP*, No. 17 Civ. 8230, 2018 WL 4387557, at *11 (S.D.N.Y. Sept. 13, 2018).

## II.    LEGAL STANDARD

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017). "The fact that both sides have moved for summary judgment does not guarantee that there is no material issue of fact to be tried and that one side or the other is entitled to that relief." *Coutard v. Mun. Credit Union*, 848 F.3d 102, 114 (2d Cir. 2017).

The court must construe the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in favor of the nonmoving party. *Liberty Lobby*, 477 U.S. at 255; *accord Soto v. Gaudett*, 862 F.3d 148, 157 (2d Cir. 2017) (citations omitted). When considering a cross-motion for summary judgment, the court "must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Coutard*, 848 F.3d at 114 (internal quotation marks omitted). When the movant has properly supported its motion with evidentiary materials, the opposing party may establish a genuine issue of fact only by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (alteration in original); *accord Fed. Trade Comm'n v. Moses*, 913 F.3d 297, 305 (2d Cir. 2019). As a result, "[c]onclusory allegations or denials therefore are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Moses*, 913 F.3d at 305 (internal quotation marks omitted).

## III. DISCUSSION

### A. Plaintiff Failed to Exhaust Her Administrative Remedies

Summary judgment is granted to Defendants because Plaintiff failed to exhaust her administrative remedies. Indeed, as far as the record shows, she has never sought to recover from the Plan the monies that she claims that the Plan, through its agents the Defendants here, wrongfully took from her.

"The doctrine of exhaustion of administrative remedies is one among related doctrines -- including abstention, finality, and ripeness -- that govern the timing of federal-court

4

decisionmaking." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). "The general rule is that 'a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself.'" *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003), *as amended* (July 24, 2003). "The requirement of administrative exhaustion can be either statutorily or judicially imposed." *Id.* at 56. "The exhaustion requirement is purely a judge-made concept that developed in the absence of statutory language . . . ." *Kesselman v. The Rawlings Co., LLC*, 668 F. Supp. 2d 604, 608 (S.D.N.Y. 2009) (quoting *Paese v. Hartford Life & Accident Ins. Co.,* 449 F.3d 435, 445 (2d Cir. 2006)) (quotation marks omitted). As such, where not required by statute, exhaustion requirements are "discretionary." *Beharry*, 329 F.3d at 56 (citing *McCarthy*, 503 U.S. at 144).

In cases disputing benefits in health benefits plans, "[t]he federal courts -- including this Circuit -- have recognized a 'firmly established federal policy favoring exhaustion of administrative remedies . . . .'" *Kesselman*, 668 F. Supp. 2d at 608 (dismissing a claim for repayment of benefits brought pursuant to ERISA for failure to exhaust administrative remedies, where Defendants had purportedly breached the subrogation or reimbursement provisions of their respective insurance plans by wrongfully demanding reimbursement by Plaintiffs out of personal injury settlements) (quoting *Paese*, 449 F.3d at 443). "This requirement is aimed at helping to reduce the number of frivolous lawsuits []; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned." *Id*. (quotation marks omitted).

Here, the parties do not dispute that Plaintiff did not attempt to appeal Phia's request for reimbursement through the Plan's appeal process. Plaintiff makes four arguments as to why Defendants' defense of failure to exhaust administrative remedies should fail. None are

persuasive.

### 1. Plaintiff Cannot Evade Exhaustion Due to Ambiguity in the Plan

Plaintiff argues that she was not required to exhaust her administrative remedies because the Plan does not contain an exhaustion requirement for disputes regarding the Plan's right to reimbursement. In support of her argument, she cites *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173 (2d Cir. 2013), in which the Second Circuit held that a plaintiff did not need to exhaust her administrative remedies under a pension plan where the plan terms were ambiguous as to whether an employee was required to pursue administrative remedies to contest the plan decision at issue. There is no dispute that the Plan here does not contain language explicitly providing guidance on how to appeal Plan requests for reimbursement. The Plan contains one appeals procedure for denials "due to a medical or surgical decision […] or due to a question of Medical Necessity or Experimental Treatment" and another for "[a]ll other claim or eligibility denials." The Plan also contains a provision that "[t]he participating Employers and/or the Plan Administrator and their designated Plan representatives have the full power and authority to . . . interpret and construe the terms of the Plan."

Defendants argue that Phia's demand for reimbursement was appropriately understood to be a denial of benefits, citing testimony by the President of INDECS that "reimbursement is, in fact, stating that the claim should not have been paid, and that it would in fact infer a denial of the claim." Although the ambiguity of the Plan's guidance on how Plaintiff should have appealed Phia's request for reimbursement is arguable, ultimately the point is moot because the analysis does not end there. Rather, even if the plan is ambiguous, to avoid the exhaustion defense the Second Circuit also requires that the claimant has "reasonably interpret[ed] the plan terms not to require her to file a benefits claim." *Kirkendall*, 707 F.3d 173, 181. In *Kirkendall*,

the plaintiff had sent several letters to her plan in an attempt to determine how to appeal under the plan, and had received no response. "It is apparent that Kirkendall thought that she had pursued the avenues available to her and reasonably concluded that the only means of vindicating her claim was through a lawsuit. Under these circumstances, we conclude that Kirkendall was not required to exhaust her administrative remedies." *Id*. In *Wegmann v. Young Adult Inst., Inc*., the Court found the plaintiff's argument that she was not required to exhaust administrative remedies due to ambiguity in the plan unpersuasive because she had made no effort to determine the correct appeals process. *Wegmann*, No. 15 Civ. 3815, 2016 WL 8711557, at *6 (S.D.N.Y. Aug. 5, 2016). In comparing the plaintiff's circumstances to those in *Kirkendall*, the court in *Wegmann* noted, "[h]ere, by contrast, Plaintiff's pleading states that she made a single oral request for benefits; at no point did Plaintiff seek clarification of the appropriate process, whether orally or in writing." *Id.* at *6 n.6. Similarly, Plaintiff here made no attempt to determine which appeals process to use for her dispute regarding the reimbursement demand. In fact, prior to Plaintiff's payment, when asked by Phia's representative for the basis of Plaintiff's belief that the lien was invalid, Plaintiff's counsel did not respond to the question.

Had Plaintiff challenged the payment administratively through the Plan, she might well have recovered her payment. Per the deposition of Christopher Aguiar, the director of the legal department Subrogation and Third Party Recovery Division at Phia, the reason that Phia demanded reimbursement from Plaintiff was because of an "incorrect understanding that this was a Maryland claim, or this was subject to Maryland law" because "the case handler inadvertently understood this to be a Maryland claim, not a New York claim." Mr. Aguiar also responded in the affirmative when asked if it was fair to say that there would have been no reimbursement claim against Plaintiff had the claims handler recognized her claim as a New York claim.

Plaintiff disputes Defendants' explanation and argues instead that Phia identified Ms. Weyant for a repayment demand based on its policies and procedures. But Plaintiff cites nothing in the record to show that it was Phia's policy or practice to collect reimbursements from personal settlements of New York claims. To the contrary, Mr. Aguiar testified that the Plan's Other Party Responsibility provision does not authorize a reimbursement claim against Plaintiff's New York claim; that Phia's claim's handler designated Plaintiff's claim as a "Maryland claim" in error; and that Phia claims handlers were provided with a chart indicating that reimbursement is not permitted in New York if the plan participant obtained a settlement. And Mary Burkhalter, the Phia claims handler for Plaintiff's claim, stated that, had Plaintiff or her counsel informed her that they believed New York law applied to the Plan's claim, she would have immediately consulted with the in-house legal department to determine the validity of any concerns. [1] Had Plaintiff made any attempt to "seek clarification of the appropriate process" or to "reasonably explore her administrative options," the issue may have been immediately resolved. *Id.*

### 2. Plaintiff Cannot Evade Exhaustion Due to the Statutory Nature of her Claim

Next, Plaintiff argues that she was not required to exhaust her administrative remedies because her claim requires application of a statute, N.Y. General Obligations Law § 5-335 ("GOL 5-335"), rather than interpretation of the Plan. Plaintiff's reliance on *Wurtz v. Rawlings Co., LLC*, 761 F.3d 232 (2d Cir. 2014), is unpersuasive. In *Wurtz*, the Second Circuit held that plaintiffs seeking to enjoin insurers under GOL § 5-335 from seeking reimbursement from plaintiffs' settlements were not preempted by ERISA because plaintiffs' rights under GOL § 5-

---

[1] That the declaration itself is hearsay is not an impediment on a motion for summary judgment, assuming that Ms. Burkhalter is available to testify at trial. "Hearsay evidence is admissible at the summary judgment stage if the contents would or could otherwise be admissible at trial." *GE Funding Capital Mkt. Servs., Inc. v Neb. Inv. Fin. Auth.*, No. 15 Civ. 1069, 2017 WL 2880555, at *3 (S.D.N.Y. July 6, 2017), *aff'd*, 767 F. App'x 110 (2d Cir. 2019) (alteration omitted).

335 are "not provided by their plans. Indeed, the terms of plaintiffs' [] plans are irrelevant to their claims." *Wurtz*, 761 F.3d at 242-243 (alterations omitted). But *Wurtz* is inapposite; Plaintiff here does not allege that the terms of her plan are irrelevant to her claim. Indeed, Plaintiff alleges in her complaint that Defendants violated the terms of the Plan by demanding reimbursement. Also, Plaintiff's claim under GOL § 5-335 was dismissed at the motion to dismiss phase because she failed to bring a claim against the Plan itself. *See Weyant*, 2018 WL 4387557, at *6. Her sole claim now is a claim for conversion against the Plan's claim administrator and its agent, on the bases of the Plan's violation of GOL § 5-335 and because "the policy under which Defendants demanded and recovered repayment against Plaintiff does not contain a repayment obligation requiring Plaintiff to repay the Defendants."

Nor is Plaintiff's claim similar to the claims that New York courts have found do not require administrative exhaustion. *See e.g. Coleman v. Daines*, 913 N.Y.S.2d 83, 90 (1st Dep't 2010) (Plaintiffs alleging that policies of plan violated various ERISA statutes), *aff'd sub nom. Coleman ex rel. Coleman v. Daines*, 979 N.E.2d 1158 (N.Y. 2012). In *Coleman*, the Court of Appeals affirmed the lower court's decision not to dismiss based on failure to exhaust because "[a]ccepting as true the assertion that respondents maintain policies and procedures as alleged, Coleman's pursuit of the claims through the administrative process would have been futile." *Coleman ex rel. Coleman*, 979 N.E.2d at 1160. As discussed above, an administrative challenge might well have ended in her favor. The cases cited by Plaintiff are equally inapposite. *See Apex Air Freight, Inc. v. O'Cleireacain*, 619 N.Y.S.2d 38, 38 (1st Dep't 1994) ("The court properly determined that plaintiff need not exhaust administrative remedies as the matter involved solely an issue of law and resort to administrative remedies would cause plaintiff irreparable harm.") (internal citation omitted); *McKechnie v. Ortiz*, 518 N.Y.S.2d 134 (1st Dep't

1987) ("The Court of Appeals has found, however, that even if a contract calls for arbitration, sometimes public policy considerations override the exhaustion doctrine. This is such a case.") (internal citation omitted), *aff'd*, 530 N.E.2d 1278 (N.Y. 1988); *Herberg by Herberg v. Perales*, 585 N.Y.S.2d 1, 2 (1st Dep't 1992) ("In any event, the instant situation does not present a substantive factual dispute between the parties. What is really involved here is purely the construction of the relevant statutory and regulatory framework, and the exhaustion of administrative remedies is not mandated."). The record contains no evidence that Plaintiff would have suffered irreparable harm from pursuing administrative remedies, nor does she argue public policy considerations that would override the exhaustion requirement.

Requiring Plaintiff to exhaust her administrative remedies is consistent with the principles behind requiring exhaustion of administrative remedies; courts favor "plan administrators hav[ing] primary responsibility for adjudicating benefits claims to promote the consistent treatment of claims and to minimize the burden on the courts and all parties." *McCulloch v. Bd. of Trs. of SEIU Affiliates Officers & Emps. Pension Plan*, No. 14 Civ. 9348, 2016 WL 9022578, at *6 (S.D.N.Y. Mar. 31, 2016), *aff'd*, 686 F. App'x 68 (2d Cir. 2017); *accord McCarthy*, 503 U.S. at 144–45 (1992) ("This Court long has acknowledged the general rule that parties exhaust prescribed administrative remedies before seeking relief from the federal courts. Exhaustion is required because it serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency.") (citations omitted). Here, Plaintiff's dispute is about the correct application of the Plan to her claims, and therefore judicial efficiency dictates that Plaintiff be required to exhaust her administrative remedies with the Plan.

### 3. Plaintiff Cannot Evade Exhaustion Due to 45 CFR 147.136 or the Identity of Defendants

Administrative exhaustion is an affirmative defense. *Paese*, 449 F.3d at 445–46.

Plaintiff argues that INDECS and Phia, as agents of the plan, lack standing to enforce the

exhaustion requirement. But the exhaustion requirement is enforceable in suits solely against

agents of plans. *See Del Greco v. CVS Corp.*, 337 F. Supp. 2d 475, 484 (S.D.N.Y. 2004)

(dismissing cause of action against claims administrator for failure to exhaust administrative

remedies), *aff'd*, 164 F. App'x 75 (2d Cir. 2006). Moreover, enforcing the exhaustion

requirement in suits against claims administrators is consistent with the policy behind requiring

exhaustion. *See McCarthy*, 503 U.S. at 145 ("Exhaustion is required because it serves the twin

purposes of protecting administrative agency authority and promoting judicial efficiency.")

Finally, Plaintiff argues that she "is deemed" to have exhausted her administrative

remedies because Defendants failed to provide a Notice of Adverse Benefits Determination as

required by 45 CFR 147.136(b)(2)(ii)(F). This argument fails because the regulation does not

apply to the Plan. It applies only to "group health plans and health insurance issuers *that are not*

*grandfathered health plans* under § 147.140." 45 C.F.R. § 147.136(a) (emphasis added). The

Plan itself indicates that the Plan is a grandfathered health plan under § 147.140.[2]

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED and

Defendants' motion for summary judgment is GRANTED.

---

[2] The first page of the plan document contains language consistent with the language suggested in § 147.140(a)(2)(ii) to satisfy the disclosure requirement for plans that meet the definition of grandfathered health plan coverage.

The Clerk of Court is respectfully directed to close the motions at Docket Numbers 90

and 99.

Dated: September 26, 2019
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE