UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                        :

JESSICA WEYANT,                     :

                             :

                    Plaintiff,   :        17 Civ. 8230 (LGS)

                             :

          -against-         :        **OPINION AND ORDER**

                             :

THE PHIA GROUP LLC, et al.,     :

                             :

                    Defendants. :
-----------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Jessica Weyant brings this putative class action against Defendants The Phia

Group, LLC ("Phia") and INDECS Corporation ("INDECS") (collectively, "Defendants"), on

behalf of herself and those similarly situated.  The only remaining claim is Plaintiff's claim for

conversion.  The parties cross-moved for summary judgment on this claim.  The Court granted

summary judgment in favor of Defendants on the ground that Plaintiff did not exhaust her

administrative remedies.  On appeal, the Second Circuit vacated the Court's decision, held that

there was no clear administrative remedy available for Plaintiff to pursue and remanded for

consideration of the remaining arguments presented in the parties' motions for summary

judgment.  *Weyant v. Phia Grp. LLC*, 823 F. App'x 51, 53 (2d Cir. 2020) (summary order).

Upon further consideration of the parties' remaining arguments, the parties' motions are denied.

## I.      BACKGROUND

### A.    Overview

      Unless otherwise stated, the following facts are undisputed and drawn from the parties'

submissions on the motions.

During the relevant period, Plaintiff was a participant in the Orange-Ulster School Districts Health Plan (the "Plan"). Defendant INDECS is the claims administrator for the Plan. Defendant Phia is the authorized agent of INDECs for the purposes of subrogation and reimbursement efforts on behalf of the Plan.

On April 10, 2012, Plaintiff was injured in a motor vehicle accident in Maryland (the "Accident"). As a result of Plaintiff's injuries from the Accident, the Plan provided $16,057.19 in medical benefits to Plaintiff (the "Plan Benefits"). Plaintiff returned the Plan Benefits under protest, after Defendants asserted a lien on certain settlement funds she had recouped in a separate action related to the Accident (the "Maryland Action"). Plaintiff brought this action seeking entitlement to the Plan Benefits against INDECS and Phia, but not against the Plan -- the party that ultimately received Plaintiff's repayment of Plan Benefits minus a service fee.

**B.** **Repayment of Plan Benefits**

Plaintiff contested the validity of the lien and objected to repayment of the Plan Benefits. On October 4, 2016, Raymond Marshall, Plaintiff's counsel, emailed Mary Burkhalter, Phia's claims handler, stating:

> As I just mentioned to you over the phone, my client desires to contest the validity of the entire lien. Because a lien has been asserted, I believe there are two potential options. The first option is that the amount of the lien could remain in escrow pending the dispute. The second option, and what I propose, is that my firm mail a check to the Phia Group for the entire amount of the lien . . . but that the payment will be sent to Phia Group under protest.

In support of their motion for summary judgment Defendants submitted a sworn declaration from Ms. Burkhalter. Ms. Burkhalter asserts that she spoke with Mr. Marshall on October 4, 2016, and "[i]nstead of holding the funds in escrow until any dispute could be resolved, it was his proposal that his firm send Phia a check for the full amount 'right away.'"

The parties dispute the reasons for, and extent of, Plaintiff's objections to repayment. Defendants contend that Plaintiff objected to repayment on the ground that some of the Plan Benefits may have been for treatment that was not related to the Accident and, as a result, should not be subject to repayment on account of Plaintiff's receipt of the Maryland Action settlement funds.  In support of this contention Defendants assert that on October 13, 2016, Charles Kannebecker,[1] another lawyer for Plaintiff, informed Ms. Burkhalter that "he want[ed] [Phia] to sign an agreement that Phia would accept the funds but that if Ms. Weyant felt that the Plan had paid claims for treatment that was not related to this accident, she could appeal those payments." Plaintiff denies that she or her counsel stated that her dispute "was only regarding claims purportedly not related to the accident," and contends that she communicated that she contested the entire lien.  In an email dated October 11, 2016, Ms. Burkhalter asked Mr. Marshall to provide a "reason patient feels [the] plan [is] not entitled to reimbursement," and stated that the Plan will "accept $10,000.00 in satisfaction [of] its subrogation claim in the amount of $16,057.19."  The record does not include a response from Mr. Marshall to Ms. Burkhalter's question regarding the reasons for Plaintiff's objection to the repayment or to the Plan's proposed reduction of the repayment.

On November 16, 2016, Ms. Burkhalter emailed Mr. Marshall, stating:

> Our office agrees to accept payment in full in the amount of $16,057.19 with the understanding that if said amount reimbursed represents payment for the claims not related to the above incident, the patient has the right to dispute said reimbursement.

---

[1] As addressed in Section II(A)(4) *infra*, Plaintiff objects to the admissibility of Mr. Marshall's and Mr. Kannebecker's statements on hearsay grounds.

On November 18, 2016, Ms. Burkhalter again emailed Mr. Marshall, stating that "the Plan will accept the payment in full and if the patient wishes to contest the payment, the patient may do so."

On November 22, 2016, Plaintiff sent Phia a check for $16,057.19 with a letter stating:

Enclosed please find a check in the amount of $16,057.19, representing the lien for the above employee. [Plaintiff] has reserved her right to contest the validity of the lien. You agreed in your November 18, 2016, email to me that [Plaintiff] could proceed in this manner.

This check is remitted with the condition that this payment is made under protest, does not waive any dispute or constitute a voluntary payment by [Plaintiff]. If you do not agree to these conditions, then you must immediately return this check and you may not keep, cash or deposit this check.

If you do keep, cash or deposit this check, it constitutes an agreement that this payment is made under protest, does not waive any dispute or constitute voluntary payment by [Plaintiff].

Plaintiff testified that she submitted a payment because she was afraid of the consequences of not doing so -- specifically, losing her health insurance while she was pregnant and still recovering from the Accident.

Phia retained $3,532.58 of Plaintiff's payment as a "service fee" and sent the balance to INDECS. Per the sworn declaration of Bruce Buchanan, Sr., President of INDECS, "INDECS forwarded 100% of the recovery to the Plan and has not retained any of the funds paid by [Plaintiff] nor was it paid a fee for its service."[2]

---

[2] Plaintiff disputes, but does not point to any evidence in the record to rebut, this fact. Plaintiff's denial without more does not raise a genuine issue of fact. *See Fed. Trade Comm'n v. Moses,* 913 F.3d 297, 305 (2d Cir. 2019) ("Conclusory allegations or denials therefore are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.") (internal quotation marks omitted).

## II.   STANDARD

Summary judgment is appropriate where the record establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  There is a genuine dispute of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *accord Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Liberty Lobby*, 477 U.S. at 248; *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017).

In evaluating a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences and resolv[e] all ambiguities in its favor."  *Wagner v. Chiari & Ilecki, LLP*, 973 F.3d 154, 164 (2d Cir. 2020) (internal quotation marks omitted).  When evaluating cross-motions for summary judgment, the Court reviews each party's motion on its own merits and draws all reasonable inferences against the party whose motion is under consideration.  *Cayuga Nation v. Tanner*, No. 20 Civ. 1310, 2021 WL 3160077, at *8 (2d Cir. July 27, 2021).  When the movant properly supports its motion with evidentiary materials, the opposing party must establish a genuine issue of fact by citing to particular parts of materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).  "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment."  *Moses*, 913 F.3d at 305 (quotation marks omitted).

### III.     DISCUSSION

### A.     Conversion Claim

The parties dispute whether Plaintiff's conversion claim arises under the New York

Uniform Commercial Code ("UCC"), under New York common law or both.  A UCC

conversion claim has a demand requirement, while common law conversion does not.  As

explained below, UCC § 3-419 on conversion applies, and material issues of fact preclude

summary judgment on that claim.  Summary judgment on any common law conversion claim,

which may be precluded upon adjudication of the UCC claim, is also denied.

### 1.     UCC Article 3 Applies

New York law applies to this dispute.  *Weyant v. Phia Grp.*, No. 17 Civ. 8230, 2018 WL

4387557, at *3-4 (S.D.N.Y. Sept. 13, 2018).  UCC Article 3 governs "commercial paper -- that is

to say, to drafts, checks, certificates of deposit and notes as defined in Section 3-104(2)."  N.Y.

U.C.C. Law § 3-103, Official Comment 1.  "[Article 3] does not apply to money, documents of

title or investment securities."  N.Y. U.C.C. Law § 3-103.  UCC § 3-104 provides:

> (1) Any writing to be a negotiable instrument within this Article must
>     (a) be signed by the maker or drawer; and
>     (b) contain an unconditional promise or order to pay a sum certain in
>     money and no other promise, order, obligation or power given by the
>     maker or drawer except as authorized by this Article; and
>     (c) be payable on demand or at a definite time; and
>     (d) be payable to order or to bearer.
> (2) A writing which complies with the requirements of this section is . . . (b) a
> "check" if it is a draft drawn on a bank and payable on demand . . . .

N.Y. U.C.C. Law § 3-104.  An official comment explains that, "[a]ny writing which meets the

requirements of subsection (1) and is not excluded under Section 3-103 is a negotiable

instrument, and all sections of this Article apply to it, even though it may contain additional

language beyond that contemplated by this section."  N.Y. U.C.C. Law § 3-104, Official

Comment 4.

The check at issue is a negotiable instrument within UCC Article 3 such that all sections of Article 3 -- including UCC § 3-419 -- apply.  The check appears to be signed by the maker, Chason, Rosner, Leary & Marshall, LLC, the law firm that represented Plaintiff in her Maryland Action (and no party argues or presents evidence to the contrary), contains an unconditional promise to pay $16,057.19 as discussed in the immediately following section and is payable on demand to Phia.

Plaintiff's argument that the check is cash and thus not subject to UCC Article 3 is untenable based on the plain language of UCC Article 3, which encompasses checks that meet the requirements of UCC § 3-104(1).

### 2.    The Check Contains an Unconditional Promise to Pay

Plaintiff challenges the applicability of Article 3 on the ground that the check does not contain an unconditional promise to pay.  This conclusion is incorrect.

"UCC 3-104(1)(b), when read in conjunction with UCC 3-112, covers the various promises, orders, obligations, or powers which, in addition to the maker's or drawer's unconditional promise of payment, may be included in a negotiable instrument."  *OneWest Bank, N.A. v. FMCDH Realty, Inc.*, 83 N.Y.S.3d 612, 616 (2d Dep't 2018); *see* N.Y. U.C.C. Law § 3-104, Official Comment 3.  UCC § 3-104(1)(b) provides: "Any writing to be a negotiable instrument within this Article must . . . contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this Article."  Section 3-112 states:

> (1) The negotiability of an instrument is not affected by
>        (a) the omission of a statement of any consideration or of the place
>        where the instrument is drawn or payable; or
>        . . .

> (e) a term purporting to waive the benefit of any law intended for
> the advantage or protection of any obligor; or
> . . . .
> (2) Nothing in this section shall validate any term which is otherwise
> illegal.

N.Y. U.C.C. Law § 3-112.

Plaintiff's cover letter with the check states that acceptance of the check constitutes an agreement that the payment is involuntary and that Plaintiff has not surrendered her right to contest the lien.  But these conditions are not on the check itself and do not affect its negotiability.  The face of the check has Plaintiff's name in the "Memo" field, but otherwise contains no notation or limitation on the unconditional promise to pay.  *See Carador v. Sana Travel Serv., Ltd.*, 700 F. Supp. 787, 789–90 (S.D.N.Y. 1988), *aff'd sub nom. Carador v. Sana Travel Serv.*, 876 F.2d 890 (2d Cir. 1989) ("A check is not a negotiable instrument if the drawer writes on it a promise, order, obligation or power, which, when examined on its face, in any way limits the drafter's unconditional promise to pay.") (applying New York law); 5A Anderson U.C.C. § 3-105:11 (3d. ed.) ("The fact that a nonnegotiable document or agreement is attached to a negotiable instrument does not impair the negotiability of the instrument as long as the instrument does not state that it is subject to or governed by the attached instrument.").  Consequently, the check is a negotiable instrument subject to Article 3.

### 3.    A Common Law Conversion Claim Cannot Succeed Where a UCC § 3-419 Claim Would Otherwise Fail

Although a UCC conversion claim pursuant to § 3-419 does not displace an otherwise viable common law conversion claim, "a plaintiff cannot sidestep[] the U.C.C. by restating a failed  § 3-419 claim as a claim for common-law conversion."  *Lesser v. TD Bank, N.A.*, 463 F. Supp. 3d 438, 453 (S.D.N.Y. 2020).  This principle is based primarily on UCC § 1-103(b), which states, "Unless displaced by the particular provisions of this act, the principles of law and equity .

. . supplement its provisions."  N.Y. U.C.C. Law § 1-103(b).  An official comment explains:

> [T]he Uniform Commercial Code is the primary source of commercial law rules
> in areas that it governs, and its rules represent choices made by its drafters and the
> enacting legislatures about the appropriate policies to be furthered in the
> transactions it covers.  Therefore, while principles of common law and equity
> may *supplement* provisions of the Uniform Commercial Code, they may not be
> used to *supplant* its provisions, or the purposes and policies those provisions
> reflect, unless a specific provision of the Uniform Commercial Code provides
> otherwise.  In the absence of such a provision, the Uniform Commercial Code
> preempts principles of common law and equity that are inconsistent with either its
> provisions or its purposes and policies.

N.Y. U.C.C. Law § 1-103, Official Comment 2 (emphasis in original); *see also Prudential Bache*

*Secs., Inc. v. Citibank, N.A.*, 536 N.E.2d 1118, 1123 (N.Y. 1989) ("Section 1-103 intended the

common law to supplement, not contradict, the other provisions of the UCC.").

Consequently, a plaintiff cannot bring a common law conversion claim as an alternative

to a failed UCC conversion claim under § 3-419, but the two claims can co-exist if the UCC

claim is viable.  *See Lesser*, 463 F. Supp. 3d at 453 (denying inter alia a motion to dismiss § 3-

419 and common law conversion claims); *Mouradian v. Astoria Fed. Sav. & Loan*, 689 N.E.2d

1385, 1388 (N.Y. 1997) (finding that UCC § 3-419(2) displaces contrary-pre-Code common-law

and equitable principles, including the availability of common-law defenses to drawees);

*Prudential*, 536 N.E.2d at 1123 ("To permit resort to such common-law claims in instances

where the Code unmistakably precludes recovery would be to contradict and effectively nullify

[it] . . . It is inconceivable that those who drafted the UCC intended to forbid recovery under the

Code, but to permit the same remedy for the same wrong outside the Code."); *Lawyers' Fund for*

*Client Prot. of State v. Gateway State Bank*, 709 N.Y.S.2d 243, 245–46 (3d Dep't 2000)

(explaining that the UCC preempts common law contract claims to the extent that the bank no

longer holds any proceeds, since 3-419(c)(3) explicitly limits liability in that way).

Here, because an issue of fact precludes summary judgment on the UCC § 3-419

conversion claim, summary judgment is denied on the common law conversion claim as well.
Reconciling the two claims, if necessary, can be addressed via special interrogatories to the jury.[3]

### 4. There Is a Material Dispute of Fact Regarding Whether a Demand for Return Was Implied Under the Circumstances and Whether the Payment Was Voluntary

Plaintiff's claim for conversion requires that she made a demand for return of the check, and relatedly, that she did not make the payment voluntarily. The evidence is conflicting as to both questions.

UCC § 3-419(a) provides: "(1) An instrument is converted when . . . (b) any person to whom it is delivered for payment refuses on demand either to pay or to return it." "Demand for a return at a particular time may, however, be made at the time of delivery; or it may be implied under the circumstances or understood as a matter of custom." N.Y. U.C.C. Law § 3-419, Official Comment 2.

The voluntary payment doctrine bars recovery of payments that are "voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 790 N.E.2d 1155, 1155 (N.Y. 2003) (finding that the voluntary payment doctrine barred recovery where plaintiff paid several late fees, even though she was unaware that the fees constituted an illegal penalty that exceeded the defendant's actual costs attributable to the late payments); *accord Mtume v. Sony Music Ent.*, 18

---

[3] Among the issues to be addressed is the measure of damages. UCC § 3-419(3) limits damages to "the amount of proceeds remaining in [the] hands of "a representative . . . who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in his hands." Assuming that a reasonable jury could find that that Defendants had acted "in good faith and in accordance with the reasonable commercial standards," and that this damages limitation is otherwise applicable, there remains the question of what additional damages, if any, would be available under common law.

Civ. 6037, 2020 WL 4895360, at *7 (S.D.N.Y. Aug. 19, 2020).

As a threshold matter, Plaintiff did not demand return of the check after delivering it to Phia. Plaintiff argues that the three complaints she filed in this action constitute demands for the return of her money. This argument is unpersuasive. To adopt such an interpretation would render the demand requirement superfluous because once a plaintiff initiates a lawsuit, the requirement would be met. *See Kimmel v. State*, 80 N.E.3d 370, 374 (N.Y. 2017) ("[W]e are guided by the principle that a statute should be construed to avoid rendering any of its provisions superfluous.").

Summary judgment is denied in part because a reasonable jury could find that Plaintiff made at least an implied demand for return of the check at the time it was delivered and did not make the payment voluntarily. Plaintiff's counsel sent the check with a letter stating that "this payment is made under protest," and had said in a previous communication that "my client desires to contest the validity of the entire lien." *See Ortiz v. Ciox Health LLC*, No. 17 Civ. 4039, 2018 WL 1033237, at *4 (S.D.N.Y. Feb. 22, 2018) (declining to dismiss a claim of overpayment when "[t]he FAC allege[d] that [plaintiff] informed NYPH that it could not charge more than $0.75 per page before paying the greater amount, " and construing this "as a 'protest' such that New York courts would not apply the voluntary payment doctrine as a bar to recovery."); *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 740 N.Y.S.2d 396, 398 (2002), *aff'd*, 790 N.E.2d 1155 (N.Y. 2003) (affirming dismissal of any overpayment claim based on the voluntary payment doctrine where plaintiff "voluntarily paid the late fee on several occasions without protest despite knowledge of facts suggesting that the fee might be excessive"). Plaintiff's payment under protest is also similar to conduct that courts have found sufficient to preclude an accord and satisfaction. *Huimin Sun v. Cai*, 45 N.Y.S.3d 155, 157 (2d

11

Dep't 2017) (affirming a finding by a court referee that plaintiff's cashing a check did not constitute accord and satisfaction where "[t]he indorsement of a check with the notation 'under protest,' or similar wording, constitutes an explicit reservation of rights which precludes an accord and satisfaction."); *Masi v. Equitable Variable Life Ins. Co.*, 577 N.Y.S.2d 146, 146 (2d Dep't 1991) (holding that a payee who cashed a check but who also provided a letter to the payor stating that she was reserving her right to commence an action, prevented an accord and satisfaction).

Here, a dispute of material fact precludes a determination of whether the circumstances were sufficient to imply a demand for return at the time of delivery, *see* N.Y. U.C.C. Law § 3-419, Official Comment 2 ("Demand for a return . . . may be implied under the circumstances . . . ."), or whether Plaintiff made a voluntary payment. The parties dispute the content of the telephone conversations between Plaintiff (through her counsel, Messrs. Marshall and Kannebecker) and Defendant Phia (by its claims handler, Ms. Burkhalter), at the same time that they were exchanging written communications. Defendants allege that, on October 4, 2016, Mr. Marshall spoke with Ms. Burkhalter and "[i]nstead of holding the funds in escrow until any dispute could be resolved, it was his proposal that his firm send Phia a check for the full amount 'right away.'" Defendants also allege that, on October 13, 2016, Mr. Kannebecker told Ms. Burkhalter that "he just wants [Phia] to sign agreement that we accept funds but if patient feels we are paid for claims [not related] to this matter she can appeal payment." Plaintiff disputes these statements.

Plaintiff objects to the admission of these statements as hearsay, but they are appropriately considered as non-hearsay or exceptions to the hearsay rule. Ms. Burkhalter's claim activity log falls within the Federal Rule of Evidence Rule 803(6) exception to the hearsay

rule for business records, and references to statements made by Plaintiff's counsel in both Ms.

Burkhalter's sworn declaration[4] and claim activity log fall within the Rule 801(d)(2) exclusion

from the hearsay rule of admissions of a party opponent. *See United States v. Kaiser*, 609 F.3d

556, 574-75 (2d Cir. 2010) (holding that notes from business telephone conversations fall within

the scope of the business records exception); *Charter Oak Fire Ins. Co. v. Fleet Bldg. Maint.,*

*Inc.*, 707 F. Supp. 2d 329, 332 n.3 (E.D.N.Y. 2009) (where an insurance company claim

representative submitted a sworn affidavit testifying to his conversations with the opposing party

and "append[ed] contemporaneous electronic notes of" the conversations in support of a motion

for summary judgment, such notes were admissible under 803(6) and 801(d)(2).).

The content of the alleged telephone conversations is material to understanding the

circumstances surrounding Plaintiff's payment and whether they implied a demand for a return.

If Plaintiff's counsel consistently communicated that any payment would be involuntary in its

entirety because the lien as a whole was invalid and Plaintiff intended to protest such payment

vigorously in whatever manner available, the circumstances imply a demand for return.  If, on

the other hand, Plaintiff's counsel suggested that some part of the lien was valid and that Plaintiff

intended to contest only portions of the payment (if any) unrelated to the car accident, and

encouraged Defendants to take the check rather than putting the disputed funds in escrow, those

circumstances do not imply a demand for return at the time of delivery.  Plaintiff disputes that

her counsel ever stated that "her dispute was only regarding claims purportedly not related to the

---

[4] That the declaration itself is hearsay is not an impediment on a motion for summary judgment, assuming that Ms. Burkhalter is available to testify at trial.  "Hearsay evidence is admissible at the summary judgment stage if the contents would [or could] otherwise be admissible at trial." *GE Funding Cap. Mkt. Servs., Inc. v Neb. Inv. Fin. Auth.*, No. 15 Civ. 1069, 2017 WL 2880555, at *3 (S.D.N.Y. July 6, 2017), *aff'd*, 767 F. App'x 110 (2d Cir. 2019).  Even if she is not available, as explained in the text, her log would overcome the hearsay rule as a business record.

accident" and asserts that "Phia elected on its own to take Plaintiff's money when it had the option of not taking Plaintiff's money and having the funds held in escrow." As a reasonable jury could find either way based on the evidence, summary judgment is denied to both Plaintiff and Defendants on the conversion claim.[5]

### B.    Defendants' Affirmative Defense – Holders in Due Course

#### 1.    There Is a Material Dispute of Fact Regarding Whether Defendants Are Holders In Due Course

Defendants assert as a defense to liability that they are "holders in due course." "To the extent that a holder is a holder in due course[,] he takes the instrument free from . . . all claims to it on the part of any person . . ." N.Y. U.C.C. Law § 3-305. "A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice . . . of any defense against or claim to it on the part of any person." N.Y. U.C.C. Law § 3-302(1). For the reasons discussed above, there is a material dispute of fact as to whether Phia took Plaintiff's check in good faith and without notice of her claim. Accordingly, the holder in due course defense is not a basis to grant summary judgment.[6]

Plaintiff incorrectly argues that Defendants are not holders in due course because they did not take the check "for value." *See generally* N.Y. U.C.C. Law § 3-303 (prescribing when a

---

[5] Similarly, Defendants' argument that the funds were incapable of being converted as commingled money, if applicable here, cannot be decided absent a determination of whether Plaintiff's demand for return occurred upon receipt of the check. *Manufacturers Hanover Tr. Co. v. Chem. Bank*, 160 A.D.2d 113, 124, 559 N.Y.S.2d 704, 712 (1st Dep't 1990) ("It is well settled that an action will lie for the conversion of money where there is a specific, identifiable fund and an obligation to return *or* otherwise treat in a particular manner the specific fund in question.") (emphasis added). Under UCC § 3-419(1)(b), if Plaintiff's check was converted due to an obligation to return implied by the circumstances upon receipt (before any commingling), Defendants' subsequent depositing of the check and commingling of the funds is irrelevant.

[6] The parties' arguments concerning this defense discuss both Defendants together and do not discuss the evidence as it applies to Phia and INDECS separately. Accordingly, this opinion does the same.

holder takes an instrument for value).  Plaintiff argues that no value was given because "Defendants provided no value to Plaintiff" but rather "took Plaintiff's money as payment of a non-existent debt . . . ."  However, the appropriate test is "whether [Defendants] gave value, not whether [Plaintiff] received value."  *Carrefour U.S.A. Properties Inc. v. 110 Sand* Co., 918 F.2d 345, 349 (2d Cir. 1990) (construing New York law).  "[V]alue is considered from the holder's perspective."  *Khanjari v. Gen. Gem Co*., No. 94 Civ. 3332, 1997 WL 433466, at *3 (S.D.N.Y. Aug. 1, 1997), *aff'd sub nom. Khanjari v. Iqbal*, 152 F.3d 918 (2d Cir. 1998).  Although the parties now dispute whether and to what extent Defendants were entitled to repayment of the Plan Benefits, the evidence is clear that Defendants asserted a claim against Plaintiff for reimbursement of the Plan Benefits.  Defendants applied Plaintiff's payment as a credit to her purported debt and therefore, took "the instrument in payment . . . for an antecedent claim."  Courts in this jurisdiction treat the discharge of antecedent debt as consideration or value.  *See In re Sharp Int'l Corp.*, 403 F.3d 43, 53 (2d Cir. 2005) (applying New York law); *accord Ray v. Ray*, No. 18 Civ. 7035, 2019 WL 1649981, at *6 (S.D.N.Y. Mar. 28, 2019) (same); *Citicorp Int'l Trading Co. v. W. Oil & Ref. Co*., 790 F. Supp. 428, 435 (S.D.N.Y. 1992) (collecting cases and applying New York law).

Plaintiff also argues that Defendants are not holders in due course for the additional reason that Phia did not take the check in good faith.  "Good faith turns on what the holder actually knew of the transaction in question."  *In re AppOnline.com, Inc*., 285 B.R. 805, 819 (Bankr. E.D.N.Y. 2002), *aff'd*, 321 B.R. 614 (E.D.N.Y. 2003), *aff'd*, 128 F. App'x 171 (2d Cir. 2004) (alterations omitted) (citing *Regent Corp., U.S.A. v. Azmat Bangladesh, Ltd.,* 686 N.Y.S.2d 24, 29 (1st Dep't 1999)); *accord Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 470 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d Cir. 2019).  The record does not clearly

15

show what Defendants knew of the transaction because there are disputes of fact as to the degree to which, and the reason(s) why, Plaintiff objected to the repayment at the time she remitted the check.  Drawing all inferences in favor of Plaintiff, a reasonable jury could conclude that Defendants were not holders in due course.

## IV.    CONCLUSION

For the reasons stated above, the parties' cross-motions for summary judgment are DENIED.

By **August 23, 2021**, the parties shall file a joint status letter with proposed next steps, and on **August 26, 2021, at 10:40 a.m.**, a conference will be held.  The conference will be telephonic and will occur on the following conference line:  888-363-4749, 5583333.

Dated:  August 17, 2021
          New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE